73 P.3d 108

**Marcus PETERSON, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 28493.

Court of Appeals of Idaho.

March 5, 2003.

Review Denied July 28, 2003.

Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kimberly J. Blas, Deputy Attorney General, Boise, for respondent.

PERRY, Judge

Marcus Ivan Peterson appeals from an order of the district court partially granting his application for post-conviction relief. We affirm.

## I.

## FACTS AND PROCEDURE

In 1997, Peterson was charged in Ada County with aggravated assault, misdemeanor battery, and misdemeanor resisting and obstructing an officer. Peterson failed to appear for a scheduled preliminary hearing and an arrest warrant was issued. In 1998, Peterson was arrested on the outstanding warrant but again failed to appear for a scheduled preliminary hearing. Peterson was subsequently taken into custody in Washington on unrelated charges. On August 6, 1999, Peterson delivered a request for final disposition of the pending Ada County charges to officials at the correctional facility in Washington pursuant to the Interstate Agreement on Detainers (IAD). The Washington officials mailed Peterson's request to the Ada County court clerk but failed to mail a copy to the Ada County prosecutor.

Peterson was arraigned in Idaho on the pending Ada County charges on January 12, 2000. The court appointed an attorney to represent Peterson. Thereafter, the state filed an amended complaint charging Peterson with aggravated battery rather than aggravated assault. A preliminary hearing was held, and an order of commitment was entered on January 26. On January 31, an information was filed charging Peterson with aggravated assault, misdemeanor battery, and misdemeanor resisting and obstructing an officer. On the same day, Peterson filed a motion to dismiss, contending that his right to a speedy trial under the IAD had been violated. Peterson's motion was ultimately denied. After Peterson's arraignment in district court on February 9, the state amended the information again in order to bring it into compliance with the magistrate's order of commitment and charged Peterson with aggravated battery. Peterson objected to the amendment of the information, which was overruled. Pursuant to a plea agreement, Peterson pled guilty on February 14 to aggravated battery, I.C. §§ 18–903, –907, and the remaining charges were dismissed. Peterson retained a different attorney and was thereafter sentenced to a unified term of fifteen years, with a three-year minimum period of confinement.

Peterson, represented by yet another attorney, filed an application for post-conviction relief. Peterson asserted that his trial counsel was ineffective for failing to investigate Peterson's claim that he was innocent of the aggravated battery charge and for failing to adequately preserve the issue of the state's alleged violation of the IAD for appellate review. Additionally, Peterson contended that his sentencing attorney rendered ineffective assistance by not preserving for appellate review the IAD issue because counsel failed to move to withdraw Peterson's guilty plea. Peterson further claimed that sentencing counsel was ineffective for failing to file a direct appeal from Peterson's judgment of conviction and sentence despite Peterson's request to do so. After an evidentiary hearing, the district court partially granted Peterson's application. The district court found that sentencing counsel was ineffective for failing to consult with Peterson concerning filing a direct appeal. The district court reissued Peterson's judgment of conviction in order to allow Peterson to file an appeal but dismissed the remainder of Peterson's claims.

Peterson now appeals from the district court's post-conviction decision. Peterson again asserts that his sentencing counsel was ineffective for failing to seek withdrawal of Peterson's guilty plea to preserve the issue of the state's alleged noncompliance with the time limit in the IAD for appellate review. Peterson contends that had sentencing counsel adequately researched the underlying IAD issue, counsel would have discovered that the issue had merit and that a reasonable attorney would have moved to withdraw

Peterson's guilty plea under the circumstances.[1]

## II.

### STANDARD OF REVIEW

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19–4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 794 P.2d 654 (Ct.App.1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 764 P.2d 439 (Ct.App.1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct.App.1992).

## III.

### ANALYSIS

■ A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State*, 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient, and that the defendant was prejudiced by the deficiency. *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995); *Russell*, 118 Idaho at 67, 794 P.2d at 656; *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of

reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Russell*, 118 Idaho at 67, 794 P.2d at 656. To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Russell*, 118 Idaho at 67, 794 P.2d at 656. This Court has long adhered to the proposition that counsel's tactical or strategic decisions will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct.App.1994).

To meet his burden of showing that sentencing counsel performed deficiently for failing to preserve the IAD issue for appellate review by not seeking withdrawal of Peterson's guilty plea, Peterson must show that his motion to dismiss for the state's alleged noncompliance with the IAD had merit and that there is a reasonable probability that Peterson would have prevailed on appeal had the issue been preserved. *See Banuelos v. State*, 127 Idaho 860, 865–66, 908 P.2d 162, 167–68 (Ct.App.1995). The state contends that Peterson has failed to demonstrate deficient performance by sentencing counsel. The state asserts that Peterson did not comply with the notice requirements of the IAD and, therefore, failed to invoke the IAD's speedy trial provision. Consequently, the state argues that Peterson has not demonstrated that his motion to dismiss had merit and that there is a reasonable probability that he would have prevailed on appeal had the issue been preserved.

The IAD sets forth procedures by which a state with untried charges pending against a defendant (the receiving state) may request and obtain temporary custody from a state in which the defendant is then incarcerated (the sending state) and establishes time limits for

---

1. Peterson additionally argues that sentencing counsel was ineffective for not preserving the issue of whether the state properly amended the then-pending aggravated assault to a charge of aggravated battery under the IAD. Peterson failed to assert this claim before the district court. Therefore, we do not address the merits of this issue on appeal. *See Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (Generally, issues not raised below may not be considered for the first time on appeal.).

commencement of the defendant's trial in the receiving state. *See* I.C. § 19–5001. Once a detainer has been lodged against a defendant by the receiving state, the defendant may initiate proceedings to require the defendant's transfer to that state for resolution of the charges there. The defendant's right to a speedy resolution of the charges in the receiving state is governed by I.C. § 19–5001(c). Pursuant to subsection (c)(1), a defendant is required to be brought to trial within 180 days after the defendant shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the defendant's imprisonment and the defendant's request for a final disposition of the untried charges. The written notice and request for final disposition shall be given or sent by the defendant to the warden, commissioner of corrections or other official having custody of the defendant, who is required to promptly forward the written notice and request for final disposition to the appropriate prosecuting official and court. I.C. § 19–5001(c)(2).

In the case at bar, the record reflects that Peterson was notified of the untried Ada County charges on August 6, 1999. On that same day, he delivered a written request for final disposition of the Ada County charges to the appropriate correctional official in the sending state. The official forwarded Peterson's written request to the Ada County court clerk, who received the request on August 16. Peterson's request was not forwarded to the prosecutor.[2] On December 8, the senior warrants and extradition coordinator for the Ada County prosecutor's office learned via telephone that Peterson's request had been sent to and received by the court clerk of Ada County. Thereafter, the coordinator made arrangements to have Peterson transported to Ada County for disposition of the untried charges. Because Peterson's written request for final disposition of the untried Ada County charges was not delivered to the Ada County prosecutor, we conclude that Peterson did not comply with the notice requirements of the IAD and thereby

failed to invoke the agreement's speedy trial provision.

Peterson urges this Court to find that he substantially complied with the notification requirements of the IAD and that the 180 day time limit began to run when he delivered the written request for final disposition of the Ada County charges to the sending state's correctional official. Peterson notes that there has been a split of authority concerning when the 180–day time limit is properly invoked. Peterson directs our attention to cases from other jurisdictions in which the courts have held that a defendant substantially complies with the notice requirements of the IAD and thereby invokes the agreement's speedy trial provision where the defendant delivers a request for final disposition of untried charges to the official having custody over him or her but the custodial official fails to forward the request to the proper authorities. *See, e.g., State v. Arwood,* 46 Or.App. 653, 612 P.2d 763 (1980). We are not persuaded.

The cases relied upon by Peterson have been called into doubt by the United States Supreme Court's holding in *Fex v. Michigan,* 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), which is also noted by Peterson. In *Fex,* the Court held that the IAD's 180–day time limit does not commence until a prisoner's request for final disposition of the charges has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against the defendant. The Court's holding has thus defeated the position that a defendant could invoke the 180–day time limit by simply delivering a written request for final disposition of untried charges to the official having custody over him or her. Although the Court in *Fex* did not face the precise issue presented here, the Court did consider the possibility that a careless or malicious custodial official could prevent commencement of the 180 day period entirely by failing to properly forward a defendant's request. However, the Court determined that a significantly worse scenario would ensue if a defendant were permitted

**2.** Peterson's request for final disposition was addressed to both the clerk of the court and the Ada

County prosecutor.

to invoke the speedy trial provision by delivering his or her request to the custodial official because if, by virtue of the official's negligence, the defendant's request is delivered to the prosecutor long after the 180 day limitation has expired, the defendant's untried charges would be dismissed before the prosecutor even knew that the defendant had requested final disposition of those charges. The Court also considered and rejected the defendant's policy arguments that fairness requires the burden of compliance with the requirements of the IAD to be placed entirely on the law enforcement officials involved because the defendant has little ability to enforce compliance.

This Court has previously noted that the IAD is a congressionally sanctioned interstate compact within the Compact Clause of the United States Constitution and is, therefore, a federal law subject to federal construction. *See State v. Bronkema,* 109 Idaho 211, 214, 706 P.2d 100, 103 (Ct.App.1985). We accordingly find the holding in *Fex* authoritative on the issue presented in the instant case. Additionally, the Ninth Circuit Court of Appeals, relying on *Fex,* reversed its earlier position and held that the 180 day time limit does not begin to run until a defendant's request for final disposition is actually delivered to and received by the appropriate prosecuting official and court in the receiving state. *See United States v. Lualemaga,* 280 F.3d 1260, 1263 (9th Cir. 2002); *United States v. Johnson,* 196 F.3d 1000, 1002 (9th Cir.1999). Indeed, the court stated in *Johnson* that the 180–day time limit does not commence until notice is delivered to the appropriate prosecutor and court despite what a defendant "may or may not have done in an attempt to cause such delivery or how much or little delay there is in the delivery." *Johnson,* 196 F.3d at 1002. Based on our review of these cases, we conclude that Peterson failed to properly invoke the speedy trial provision of the IAD. Therefore, Peterson has not met his burden of demonstrating that his motion to dismiss had merit and that there is a reasonable probability that he would prevail on appeal had the IAD issue been preserved. We conclude, as did the district court, that Peterson has thus failed to show that sentencing counsel performed deficiently.

## IV.

## CONCLUSION

We conclude that Peterson did not properly invoke the 180 day time limit under the IAD. Therefore, we hold that Peterson has failed to meet his burden of demonstrating that his motion to dismiss based on the state's alleged noncompliance with the IAD had merit and that there is a reasonable probability that Peterson would prevail on appeal had the IAD issue been preserved by sentencing counsel. Consequently, Peterson has not shown that sentencing counsel rendered deficient performance by failing to preserve the IAD issue for appellate review. The order of the district court partially granting Peterson's application for post-conviction relief is affirmed.

Chief Judge LANSING and Judge GUTIERREZ concur.